EDMUND R. CLYMA *vs.* WILLIAM KENNEDY ET AL.

Third Judicial District, Bridgeport, April Term, 1894. ANDREWS, C. J.,
    TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

A pecuniary interest in a cause disqualifies a judge from acting judicially
    in it.   But an incidental interest, not pecuniary, does not of itself con-
    stitute such disqualification.
The plaintiff published in a newspaper a libel concerning a certain justice
    of the peace.   A grand juror preferred a complaint to such justice al-
    leging said publication and praying that the plaintiff be arrested and
    dealt with according to law.   The justice issued a warrant, the plain-
    tiff was brought before him and tried, found guilty and sentenced.
    *Held* that the justice was not legally disqualified.
A judgment good in part and erroneous in part will, on appeal, be set aside
    only as to the erroneous part, if the two parts can be separated.   In
    such a case, if the error is only in the assessment of damages, the new
    trial will be confined to a reassessment of the damages.

[Argued April 17th—decided May 16th, 1894.]

ACTION to recover damages for an alleged false imprison-
ment; brought to the District Court of Waterbury and tried
to the court, *Root, J.;* facts found and judgment rendered
for the plaintiff against all the defendants, except Clancy,
and appeal by them for alleged errors in the rulings of the
court.   *Error and new trial granted as to damages only.*

All the defendants reside in the town of Naugatuck in New
Haven county.   William Kennedy is an attorney at law;
Thomas Clancy is a grand juror; William Brophy is a con-
stable, and John H. Tuttle is a justice of the peace for said
county.   The case shows that Kennedy, at the request and
by the procurement of Clancy, drew up a complaint charg-
ing therein the present plaintiff with a criminal libel in caus-
ing to be published in a newspaper certain false, malicious
and scandalous statement of and concerning the said John
H. Tuttle, in respect to his conduct in the trial of a civil
cause brought before and tried by him as a justice of the
peace for said county.   The complaint was signed by Clancy
as a grand juror of said town, and was preferred to the said
John H. Tuttle as a justice of the peace.   Thereupon the

said Tuttle issued a warrant signed by himself commanding the arrest of the plaintiff and that he be brought before him to be dealt with as the law directs. Brophy served the said warrant, arrested the plaintiff and took him before said Tuttle. There was a trial by said Tuttle, the plaintiff was found guilty, and sentenced to pay a fine of $7.00 and costs, and to stand committed until the same was paid. Thereafter a mittimus was drawn up by Kennedy at the request of Tuttle, which was signed by him and was served by Brophy; and by the command thereof, the plaintiff was arrested and committed to the common jail in New Haven, and there imprisoned one night and two days, when he was released on *habeas corpus* proceedings.

The material portions of the complaint against the plaintiff were as follows:—

"To John H. Tuttle, Esq., Justice of the Peace for said County, residing in said town, comes Thomas Clancy, a Grand Juror for said town, and on his oath of office information makes that at said town of Naugatuck, to wit: on the 29th day of November, A. D. 1890, one E. R. Clyma, now of the town of Naugatuck, unlawfully and wickedly contriving and intending to bring into hatred and contempt the administration of justice in the said town of Naugatuck, and unlawfully intending to villify and defame John H. Tuttle, Esq., on the 29th day of November, A. D. 1890, then and now a Justice of the Peace of New Haven County, living in said Naugatuck, and acting as Justice of the Peace in said town of Naugatuck in the trial of cases, unlawfully and maliciously did print and publish and cause to be printed and published in a certain public newspaper called "The Naugatuck Citizen" a certain false, scandalous and malicious defamatory libel of and concerning the said John H. Tuttle, Esq., Justice of the Peace as aforesaid, while acting in a judicial capacity, which said libel is as follows, that is to say: meaning John H. Tuttle, Esq., Justice of the Peace as mentioned aforesaid." Then follows a verbatim copy of the newspaper article which it is unnecessary to repeat here. The complaint concluded as follows:—"To the great scandal

of the said John H. Tuttle, Esq., in contempt of law, of the judicial authority and against the peace, of evil example. Wherefore the Grand Juror aforesaid prays process, etc.

The judgment of justice Tuttle so far as material was as follows :—" At a Justice Court holden, etc., E. R. Clyma, of said Naugatuck, was brought before said Court by virtue of a warrant issued by me, a Justice of the Peace for said County, in said town, upon the complaint of Thomas Clancy, a Grand Juror for said town of Naugatuck, charged with the crime of criminal libel against the said John H. Tuttle, while acting in a judicial capacity, as per complaint on file fully appears.

" And said cause was continued till December 2d, A. D. 1890, when the said Clyma, before said Court being required to make answer to said complaint, refused to plead.

" Thereupon said Court ordered that a plea of not guilty, in manner and form as in said complaint is alleged, be entered.

" Said Court having inquired into the facts stated in said complaint finds that the said E. R. Clyma is guilty of the crime of criminal libel, in manner and form as is therein alleged, and it is thereupon ordered and considered by said Court that the said E. R. Clyma pay a fine of $7.00, and pay the costs of this prosecution, taxed at $15.25, and stand committed until judgment be performed.

" And the said E. R. Clyma neglecting and refusing to comply with the judgment of said Court he was ordered to be committed to the common jail in New Haven, in and for the County of New Haven, until he shall be discharged by due course of law.

" And the said E. R. Clyma by virtue of a mittimus by me issued was committed accordingly.

                    " JOHN H. TUTTLE,
                         " *Justice of the Peace.*"

The first clause of the mittimus, after the direction to the sheriff, etc., recited that :—" Whereas, E. R. Clyma was this day brought before the subscriber, a justice of the peace for said county, by virtue of a warrant issued upon the com-

plaint of Thomas Clancy, a grand juror for said town, and found guilty of contempt of court, as follows." The language of the complaint was then set out including the alleged libelous publication, and the mittimus continued as follows:—

"Whereupon, it was considered and ordered by me, that the said                pay a fine of $7.00 to the treasury of the town of Naugatuck, and pay the costs of prosecution, taxed at $15.00 and 25 cents, and to stand committed to the common gaol in the County of                and town of                till this sentence be performed.

"And also that                be imprisoned in the common gaol                in the town of                in the county of                for the period of                days from the date hereof.

"Whereof execution remains to be done.

"And whereas the said E. R. Clyma now before me, neglects and refuses to comply with and perform said sentence;

"These are therefore by authority of the State of Connecticut to command you to take and convey the said E. R. Clyma to the common gaol in the town of New Haven, in the County of New Haven, and him deliver to the keeper thereof, and leave with him this warrant; and the said keeper is hereby commanded to receive said E. R. Clyma into his custody, within said gaol, and him confine and imprison within the same said safely keep till                shall pay said of $7.00 dollars, and said sum of $15.00 dollars and 25 cents cost, or be otherwise discharged by order of law.

"Dated at Naugatuck, the 2d day of December, 1890.

"JOHN H. TUTTLE,

"*Justice of the Peace.*"

The District Court made a finding of facts and thereon adjudged:—"That the justice had no jurisdiction to try the said action by reason of his interest, it appearing that the libel charged was against the said Tuttle." And also:— "That the said mittimus did not properly state the cause of commitment."

There are three reasons of appeal, the first and third of

which do not state specifically any error. The second one is that: "The court erred in holding that the said justice had no jurisdiction of the cause by reason of interest."

*George E. Terry*, for the appellants (defendants).

I. Justice Tuttle was not disqualified to try the criminal prosecution for libel.

The rules of the common law do not apply in any matter regulated by statute, especially so if they are in conflict, in such case the statute prevails. It is unnecessary to cite authorities in support of so plain a proposition.

The jurisdiction conferred upon a justice of the peace appears in the following statutes: Revision of 1821, p. 147, § 34; Revision of 1838, p. 129, § 34; p. 171, § 122; Revision of 1849, p. 219, § 71; p. 253, § 147; Compilation of 1854, p. 296, § 71; p. 343, § 174; Revision of 1866, p. 240, § 106; p. 281, § 215; Revision of 1875, p. 532, § 1; Revision of 1888, § 687. This latter statute confers jurisdiction in all cases when the penalty prescribed does not exceed a certain amount, without exception, and standing by itself makes no exception of any kind.

Under this section there would be no disqualification by reason of interest or for any other cause, and it would wholly abolish any common law disqualification which might have previously existed.

The statutes have from time to time provided disqualification for certain causes specified. The Revision of 1821 contains no statutory disqualification. In 1838, one of the common law disqualifications was removed. Revision of 1838, p. 141, § 1; Revision of 1849, p. 219, § 72; Revision of 1866, p. 240, § 107; Revision of 1875, p. 60, §§ 3, 4; Public Acts, 1882, chap. 16; Public Acts, 1884, chap. 39; Public Acts, 1887, chap. 50; Revision of 1888, §§ 672, 675. Gradually the statutes enlarged the disqualifications beyond the common law, and finally the statute was enacted which abrogated all common law disqualifications in criminal proceedings, leaving only the statutory provisions.

The question now to be considered is whether the fact that

the justice held jurisdiction of a complaint for libel, where the party libeled was himself, is made by statute a disqualification. If it is not, he had full jurisdiction under § 687.

The only provision under § 675 that can be claimed to apply is the clause : " Or when he may receive a direct pecuniary benefit by the determination thereof."

But the fact that the fee of $2.00 might in a measure depend upon whether he held jurisdiction or dismissed the case for want of jurisdiction, is too trivial for any court to take cognizance of.

In *Commonwealth* v. *Keenan,* 97 Mass., 589, the justice was also clerk of the Superior Court and entitled to fees as such clerk ; on trial of a criminal case he found the prisoner guilty, appeal was taken to the Superior Court, motion made for ruling that justice had no jurisdiction, and prisoner could not be held on appeal ; this was refused and exceptions taken. The court says : " The fees which the law gives for the performance of an official duty in relation to civil or criminal proceedings do not constitute an interest in the proceedings." So far as we are able to find, no case goes further than to hold that when the justice has a direct pecuniary interest in the penalty, forfeiture, or amount to be recovered, then he is disqualified.

II. If the justice had jurisdiction then all his acts done were legal and none of the defendants are liable. Nor is the defendant Kennedy liable if the justice had no jurisdiction. His acts were those only of an amanuensis or clerk, in the first instance, filling up the complaint for and at the request of Clancy, the grand juror. The court below finds that Clancy was justified in making his complaint, and not liable ; clearly, then, Kennedy, who performed the clerical work, could not be liable. Nor is the defendant Kennedy liable, even though the justice had no jurisdiction, for appearing for the State as an attorney and introducing testimony in support of the complaint of the grand juror, which the court finds he was justified in making ; or for acting as an amanuensis in filling up the mittimus at the request of the justice.

*Henry C. Baldwin* and *Robert E. Hall*, for the appellee (plaintiff.)

I. The ruling that the justice was disqualified to try the prosecution for libel, was correct.

If a judge have not the qualification which jurors must have to sit on a case, his action is absolutely void. 1 Salk., 396; Cooley on Torts, page 421; *Hall* v. *Thayer*, 105 Mass., 219; *Davis* v. *Allen*, 11 Pick., 466.

A judge is disqualified when he is the complainant or moving party in a case. Cooley on Torts, 421; *Rex* v. *Great Yarmouth*, 6 B. & C., 646; *Rex* v. *Hoseason*, 14 East, 605; *Regina* v. *Justices of Great Yarmouth*, 8 Law Rep., 2 B. Div., 525; *Van Dyke* v. *Trempeleau Ins. Co.*, 39 Wis., 390; *Dyer* v. *Smith*, 12 Conn., 389.

A commitment on a complaint barred by the statute of limitations was holden void and the justice liable. *Vaughn* v. *Congdon*, 56 Vt., 111. Where a judge of probate acted as such, approving a will which he had drawn, it was holden that the whole proceeding was void. *Moses* v. *Julien*, 45 N. H., 52; same case, 84 Am. Dec., 114, and note. When a judge or justice is disqualified to act, his acts therein are absolutely void. *Keeler* v. *Stead*, 56 Conn., 505. Where a judge of probate and commissioners appointed on an estate were disqualified by being taxpayers in a town that presented a claim, held that the whole proceeding was void and was not made valid by the withdrawal of the claim of the town before the report had been accepted by the court of probate. *Hawley* v. *Baldwin*, 19 Conn., 584. A justice of the peace who is the owner of premises trespassed upon cannot convict or act as justice in such case. *Schroder* v. *Ehlers*, 31 N. J. Law, 44. Even the legislature has no power to make a man judge in his own case. *Ibid.*

II. The court has found that the mittimus did not properly state the cause of contempt; and, although this decision of the court is unappealed from, still, if the court will consider it, we think that they will find the decision of the court in that respect also, without error.

The mittimus issued in said prosecution contains no recitation of any judgment upon said complaint.

A mittimus must set out the cause of commitment, and where it issues upon final process should show what the judgment of the court is. 15 Am. & Eng. Encyclopædia of Law, 693, and cases cited. If the court shall inspect the whole record, regardless of any assignments of error, to ascertain whether or no the judgment of the court is based upon sufficient premises, it will be found that there are other causes for rendering a judgment for the plaintiff in this case, even though not the specific ones upon which the court based its action. Under the common law, a justice of the peace has no power to punish for contempts, any acts except those committed in the presence of the court while in session. *Dean's Case*, 1 Croke, 689; 2 Salk., 698; *Regina* v. *Langley*, 2 Ld. Raym., 1029; *Queen* v. *Lafoy*, Law Reports, 8 Q. B., 134; *People* v. *Webster*, 3 Parker (N. Y.), 503; *State* v. *Applegate*, 2 McCord (S. C.), 110; *Rhinehart* v. *Lance*, 14 Vroom, 311; *S. C.*, 39 American Reports, 591. Neither a justice, nor any other court has jurisdiction to punish for contempt publications made while there was no case pending in court and long after its adjournment. *Queen* v. *Lafoy*, 8 Q. B., 134; *In re Cheeseman*, 6 Atlantic Reporter, 513; *Oregon* v. *Kaiser*, Lawyers' Reports Annotated, vol. 8, page 584; *State* v. *Anderson*, 40 Iowa, 207; *Dunn* v. *State*, 6 id., 245; *Cheadle* v. *State*, 11 North Eastern Reporter, 426; *In re Jesse Cooper*, 32 Vermont, 252–265; *Storey* v. *People*, 79 Ill., 45; Rapalje on Contempt, sec. 56, page 70. The court not having jurisdiction, the whole proceeding is void, and an action of trespass lies against all parties concerned therein. *Holden* v. *Cornish*, 8 Conn., 380; *Tracy* v. *Williams*, 4 id., 113; *Allen* v. *Gray*, 11 id., 95.

ANDREWS, C. J. We think the District Court erred in holding that justice Tuttle was disqualified to hear and determine the grand juror complaint for libel, by reason of interest. It was doubtless indecorous and unwise for him to try the case, because it exposed him to the appearance of

seeking to revenge an insult to himself. There is no statute by the terms of which he was forbidden to act in the case; and we are not able to see that he had any such interest in it as made his action void. He was not a party to the cause. He had no pecuniary interest in the subject-matter of the action. It was not his own cause. He was not the moving party. He was not liable for costs, nor was it possible for him to recover anything by any judgment which might be rendered. The event of the proceeding could not bring him gain, nor subject him to any loss. The fees which he might receive do not constitute an interest in the proceedings. *Commonwealth* v. *Keenan*, 97 Mass., 589. Justice Tuttle had no interest in the cause other than such as he had as a citizen—as one of the public.

The interest in a cause which of itself disqualifies a judge from acting therein is a pecuniary one—similar to the interest which a party in a civil action has in it. All the cases ancient and recent are to this effect. *Dr. Bonham's Case*, 8 Coke, *226, was an action brought by Thomas Bonham against George Turner and others for a false imprisonment. The defendants pleaded in bar the charter of the "College or Commonalty of the Faculty of Physic in London," by which it appeared that certain persons called the censors of that college, might summon before themselves any one who practiced physic, for examination, and on finding such person to be unskillful in such practice, impose a fine upon him, one moiety of which was to be paid to themselves; and alleged that the plaintiff had been so summoned and examined, and had been ordered to pay a fine of one hundred shillings, and that for the nonpayment of fine he had been arrested and imprisoned. Upon this plea the case says, p. *234:—"The censors cannot be judges, ministers and parties; judges to give sentence or judgment; ministers to make summons; and parties to have the moiety of the forfeiture; *quia aliquis non debet esse Judex in propriâ causâ, imo iniquum est aliquem suæ rei esse judicem*." *Day* v. *Savadge*, Hobart's Rep., 85, 87, is of the same kind. These are the oldest cases found in the books. Recent ones are *Fletcher*

v. *Peck*, 6 Cranch, 87, 133 ; *Taylor* v. *Porter*, 4 Hill (N. Y.),
146 ; *Doolittle* v. *Clark*, 47 Conn., 316 ; *Parrott* v. *Housatonic
R. R. Co.*, 47 id., 575 ; *Dyer* v. *Smith*, 12 id., 384.    The
case most strongly pressed by the plaintiff was *Schroder* v.
*Ehlers*, 31 N. J. Law, 44.    A statute of that State provided
that certain trespasses to lands might be punished by a fine
which went to the owner of the land.    The defendant in
the case was a justice of the peace and was the owner of the
land on which such a trespass had been committed by the
plaintiff.    The defendant had arrested the plaintiff, brought
him before himself and sentenced him to pay a fine.    The
case was a writ of error to reverse that judgment.    In the
course of the opinion the court says :—" The entry upon
the land in question was in no wise a breach of the peace,
but a simple tort, of a civil character.    Its punishment ap-
pertained not to criminal but to civil jurisdiction."    The
judgment was reversed on the ground that the defendant
was disqualified by interest from acting in the case.    Cooley
on Torts, 421.    The cases of *Rex* v. *Great Yarmouth*, 6 B.
& C., 646, and *Rex* v. *Hoseason*, 14 East, 605, cited by the
plaintiff, are cases which, though criminal in form, are really
civil in effect.    In each of these cases the magistrate who
tried it was the complainant, or moving party in the prose-
cution.

The complaint in the case before us alleges, as ground
upon which damages were demanded, the arrest of the plain-
tiff on the warrant signed by justice Tuttle, and the deten-
tion before him, as well as the arrest on the mittimus, the
being taken to jail, and the imprisonment there.    We have
shown that justice Tuttle had authority to issue the warrant,
and to try the case and to pass sentence.

The District Court also found that the mittimus issued by
justice Tuttle did not properly state the cause of commit-
ment.    From this finding there is no appeal.    We think the
mittimus was void, and that the plaintiff is entitled to re-
cover damages for whatever was done under it.    All the
acts done by the defendants, or any of them, subsequent to
the passing of the sentence, were unlawful, viz.: the arrest

of the plaintiff on the mittimus, the taking him to and the imprisonment in the common jail.  For these acts the plaintiff is rightfully entitled to demand and recover damages. It is altogether probable that the damages awarded by the trial court were assessed mainly for the acts last named. But there is no rule furnished in the record by which this court can determine.  If there was such a rule there would be no need of a new trial in the case.  This court could in such a case set aside that part of the judgment which was erroneous and affirm that part which was not erroneous. *Stebbins* v. *Waterhouse,* 58 Conn., 375 ; *Sherwood* v. *Sherwood,* 32 id., 15.

It appears that Kennedy drew up the mittimus.  He participated in the unlawful acts for which the plaintiff is entitled to recover damages.  The judgment properly went against him.

There must be a new trial, but it should be limited solely to the assessment of damages.

There is error and a new trial is granted.  The new trial to extend only to the assessment of damages as herein indicated.

In this opinion the other judges concurred.